**UNITED STATES, Appellant,**

v.

**Judy E. HAMILTON, Appellee.**

**No. 13131.**

District of Columbia Court of Appeals.

Argued June 28, 1978.

Decided Aug. 2, 1978.

**450**

David G. Hetzel, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and E. Anne McKinsey, Asst. U. S. Attys., Washington, D. C., were on brief, for appellant.

Silas J. Wasserstrom, Public Defender Service, Washington, D. C., for appellee. Leslie J. Harris, Public Defender Service, Washington, D. C., was on brief for appellee.

Before NEWMAN, Chief Judge, and KERN and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

The government appeals[1] a trial court order granting appellee's motion to suppress currency seized from her at the time of her arrest. For the reasons which follow, we reverse.

On October 5, 1977, appellee and a companion encountered undercover Metropolitan Police Detective Ross Swope in the vicinity of 11th and P Streets, Northwest, and asked him if he wanted to buy dilaudid, a narcotic. The detective replied affirmatively. Appellee's companion thereupon obtained a dilaudid pill from appellee and handed it to the detective, who paid $23 in marked police bills. Detective Swope then drove around the block, where, by prearrangement, fellow vice squad Detective Stephen Comeau was waiting. Swope described the sellers to Comeau and directed him to the place where the sale had occurred. A few minutes later Comeau arrested appellee and her companion. An incidental search of appellee produced an unmarked twenty-dollar bill, and a marked dollar bill. No narcotics were found.

1. Such an appeal is authorized by D.C.Code 1973, § 23–104(a)(1).

Appellee was charged by information with possession of dilaudid, in violation of D.C.Code 1973, § 33–402(a).[2] On November 30, 1977, a hearing was held on appellee's motion to suppress. The trial court found probable cause for appellee's arrest but took under advisement appellee's primary contention that because she had not been in possession of drugs when searched, she was not in violation of § 33–402(a) at the time of her arrest, and that the bills must therefore be suppressed pursuant to § 33–402(c). On January 17, 1978, the trial court ruled in favor of this contention.

The government assigns error to this ruling, and argues that § 33–402(c), under which appellee's suppression motion was granted, should not be construed to invalidate the seizure because appellee's arrest can be justified under D.C.Code 1973, § 23–581(a)(1)(A).[3] This latter provision does not contain the evidentiary limitation of § 33–402(c).

The trial court ruling suppressing the bills under § 33–402(c) necessarily reflects the court's belief that appellee was arrested pursuant to § 33–402(b), since the evidentiary limitation of subsection (c) comes into play only when an arrest is effected under subsection (b). This conclusion was likely based on the fact that appellee was booked for violating the Uniform Narcotics Act, § 33–402(a). However, appellee's sale of

the dilaudid pill could have supported a felony charge under the Controlled Substances Act, 21 U.S.C. § 841 (1970).[4] Accordingly, the government contends, the warrantless arrest can be justified as an ordinary felony arrest under § 23–581(a)(1)(A), without the evidentiary limitation of § 33–402(c).

■ It is well settled that the validity of an arrest does not depend on the characterization given the underlying crime by the arresting officer. *Bond v. United States,* D.C.App., 310 A.2d 221, 224 (1973); *United States v. Hobby,* D.C.App., 275 A.2d 235, 237 (1971); *Bell v. United States,* 102 U.S.App.D.C. 383, 254 F.2d 82 (1958). In *Bell,* the Circuit Court observed:

[The] description given by the officer does not go to the question of probable cause. The question is not what name the officer attached to his action; it is whether, in the situation in which he found himself, he had reasonable ground to believe a felony had been committed. [*Id.* at 387, 254 F.2d at 86.]

Thus, in the case at bar, the fact that Detective Comeau charged appellee with violation of § 33–402(a), a misdemeanor, does not preclude finding the arrest valid under § 23–581(a)(1)(A) if the detective had probable cause to believe a felony had been committed and that appellee had committed it. Nor is this altered by the prosecutor's

---

2. Section 33–402 provides:
   (a) It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this chapter.
   (b) Arrests without a warrant, and searches of the person and seizures pursuant thereto, may be made for a violation of subsection (a) hereof by police officers, as in the case of a felony, upon probable cause that the person arrested is violating such subsection at the time of his arrest.
   (c) No evidence discovered in the course of any such arrest, search, or seizure authorized by subsection (b) hereof, shall be admissible in any criminal proceeding against the person arrested unless at the time of such arrest he was violating the provisions of this section.

3. Section 23–581, the general arrest statute, provides in pertinent part:

(a)(1) A law enforcement officer may arrest, without a warrant having previously been issued therefor—
(A) a person whom he has probable cause to believe has committed or is committing a felony . . . .

4. This provides, in pertinent part:
   (a) Unlawful Acts.
   Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
   (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.
   Dilaudid is the brand name for hydromorphinol, which is a controlled substance under 21 U.S.C. § 812 (1970). *See* 21 CFR § 1308.11(c) (1977).

decision to charge appellee with a misdemeanor violation of § 33–402(a). This charging decision cannot invalidate an otherwise legal arrest. *See United States v. Hobby, supra* at 236.

■ Appellee responds that § 23–581(a)(1)(A) simply does not apply to the instant situation. Appellee maintains that she was arrested and charged under § 33–402 and is thus entitled, as the trial court found, to the protection of subsection (c) of that provision. She asserts that acceptance of the government's argument, upholding the search and seizure under § 23–581(a)(1)(A), would effectively read § 33–402 out of the Code. She observes correctly that a specific statute normally overrides a general one, *Sanker v. United States*, D.C. App., 374 A.2d 304, 309 (1977), and that where two statutes can coexist, our duty is ordinarily to regard each as effective. *Id.* at 308 n.4. She suggests that § 33–402 and § 23–581, the general arrest statute, are easily reconciled: the former deals specifically with all arrests made under the Uniform Narcotics Act and the latter governs all other arrests.

■ Appellee's argument must be rejected. The legislative history of § 33–402(b) compels us to conclude that this provision was not enacted to preempt or detract from any other authority to arrest in drug cases, but instead to plug what Congress considered a loophole in the law as it existed previously.

Section 23–581 is, for the most part, a codification of the common law, under which a police officer may effect the warrantless arrest of any individual whom he has probable cause to believe has committed or is committing a felony, or whom he has probable cause to believe has committed or is committing any offense in his presence. Prior to enactment of § 33–402(b), a police officer could not effect an arrest on misdemeanor drug charges unless he had personally observed commission of the offense. The adoption of § 33–402(b) came at the urging of the United States Attorney and

the Chief of Police in response to a growing drug problem in this city, and abolished the personal observation requirement for misdemeanor drug offenses.[5] In reporting out the bill, the House committee referred to the "gaps" in existing drug control laws, and observed:

> At the present time, in order to make a valid arrest without a warrant in [drug] cases, a violation of the act must occur in the presence of the police officers. The United States Attorney and the Chief of Police urge that such arrests be authorized, based upon probable cause as in the case of a felony, to enable better enforcement of the Uniform Narcotics Act for the District of Columbia. [H.R. Rep. No. 2277, 84th Cong., 2d Sess. 6, 15 (1956).]

It is clear that § 33–402(b) purported to strengthen the hand of the police with respect to misdemeanor drug offenses. Because this provision was drafted at a time of growing local concern with the drug problem, it is unrealistic to believe that Congress intended enactment of § 33–402(b) to limit the power of police to make drug arrests under § 23–581(a)(1)(A). We agree with the characterization urged by the government: Section 33– 402(b) applies in the narrow situation in which a drug offense cannot for probable cause purposes be regarded as anything but a misdemeanor, and where the arresting officer has not personally observed the allegedly criminal behavior, but acts on a reliable tip. We hold that § 33–402(b) does not foreclose basing appellee's arrest and the attendant search and seizure upon § 23–581(a)(1)(A).

■ We are left to determine whether, on the record before us, the arrest can be sustained as a warrantless felony arrest under § 23–581(a)(1)(A). Three questions must be resolved in this connection. First, was Detective Comeau entitled to rely on information related to him by his partner, Detective Swope? Second, did Detective Comeau have probable cause to believe that appellee had committed a felony, so that a

---

**5.** *See* Hearings Before the Subcomm. on Improvements in the Federal Criminal Code of the Comm. on the Judiciary, 84th Cong., 1st Sess., part 4 at 1084.

warrantless arrest might be effected legally under § 23–581(a)(1)(A)? Third, was the search of appellee and seizure of the bills a legitimate incident to her lawful arrest?

Certainly, Detective Comeau relied reasonably on his partner's information. He testified that the two detectives made drug arrests in such a manner every day. Indeed, the reliability of the information is supported by the trial court's finding of probable cause for appellee's arrest under § 33–402(b), since a warrantless arrest for a drug misdemeanor occurring out of the arresting officer's presence must be supported by reliable information. Moreover, we have recognized that a police officer may place great reliance on information provided by a fellow officer. *Hughes v. United States*, D.C.App., 363 A.2d 284, 286 (1976). *See United States v. Ventresca*, 380 U.S. 102, 111, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

With respect to whether there was probable cause to believe appellee had committed a felony, we note that Detective Comeau, a man of five years' experience on the vice squad, testified that he was aware that the sale of dilaudid violated the Controlled Substances Act. We find the arrest lawful, and sustain the attendant search and seizure as incident to this lawful arrest. *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1975); *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Whalen v. United States*, D.C.App., 379 A.2d 1152 (1977).

Accordingly, we hold that the trial court erred in granting appellee's motion to suppress, and the order from which this appeal is taken is reversed and the case remanded for further proceedings.

*Reversed and remanded.*