Jonathan **SPEED**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 88–101.

District of Columbia Court of Appeals.

Argued April 6, 1989.
Decided July 18, 1989.

Blaise Supler, Public Defender Service, with whom James Klein, and Jennifer P. Lyman, of the Public Defender Service, Washington, D.C., were on the brief, for appellant.

Patricia L. Petty, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, Asst. U.S. Atty., at the time of argument, and Elizabeth Trosman, Patrice I. Kopistansky, and Saul M. Pilchen, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, FERREN, Associate Judge, and KERN, Senior Judge.

KERN, Senior Judge:

The issue in this appeal is whether the trial court properly instructed the jurors before they found appellant guilty, as charged, of simple assault upon the complainant,[1] a Metro Transit police officer. We hold that the instruction the court gave did not fully instruct the jury either on appellant's right of self-defense against this particular complainant or on the government's burden to disprove his self-defense beyond a reasonable doubt. The omissions from the court's instruction are not harmless, and so we must reverse.

I.

The prosecution presented evidence at trial that the assault victim, in uniform, responded to a call from a Metro bus driver who had reported that a woman passenger on his bus was displaying a knife. It was about midnight and the officer went to the scene, a bus stop at 8th & H Streets, N.E.[2] Other officers had removed all the passengers from the Metro bus and restrained the woman, who had been threatening to harm herself and appeared to require immediate hospitalization. The responding officer commenced to interview a potential wit-

---

1. *See* D.C.Code § 22–504 (1981).

2. The jurisdiction of Metro Transit officers is "limited to transit facilities (including bus stops)" and the term "bus stops" is defined to include that area within 150 feet of a Metro bus stop sign. D.C.Code § 1–2431(76) (1987 Repl.). There is no suggestion that the event in question occurred beyond the bus stop, as defined.

ness, one among a number of passengers and passers-by who were on the scene.

The appellant appeared out of the crowd and loudly criticized and cursed the attitude of the Metro Transit police, questioned what they were doing there, and impeded the officer from conducting his interview. When the officer attempted to persuade appellant to stand back, he noticed appellant reach into his pocket. Fearing that his reach was for a weapon, the officer, with both of his hands, grasped appellant's hand and pinned it in the pocket. Appellant, with his free hand, struck the officer, drawing blood, and ran. He was taken into custody and ultimately charged with and convicted of simple assault, a misdemeanor.

Appellant testified in his defense that he saw that the Metro Transit police had arrested a woman and were "handcuffing her and escorting her away" and he joined the crowd of fifty to seventy people around the Metro bus to watch. When appellant commented to a person in the crowd about "how the Metro police carried itself," the complainant officer, obviously angry, approached him and, according to appellant, said " 'I've got something for you,' as soon as he gets finished with what he was doing." Then, according to appellant's testimony, the complainant came at him through the crowd with "nightstick drawn," and appellant testified, "I told him not to put his hands on me." Appellant continued his testimony that "simultaneously when he reached to grab me, I struck him.... At that particular time, I was backing up from him." Appellant further testified that he thought "[the officer] was going to assault me ... [b]ecause ... I had three occasions where the Metro Police assaulted me."

Subsequent to the testimony and prior to the charge to the jury, the trial judge conscientiously discussed with counsel the instructions he should give to the jurors. The government argued that in this case

the general instructions on self-defense suitable in a simple assault case would not be appropriate because the complainant, when struck by appellant, had been in uniform and performing his duties as a Metro Transit officer and had placed his hands upon appellant in order to protect himself. In the government's view, appellant, at best, was entitled only to the "self-defense" portion of the standard instruction for assault on a police officer.[3] Standard Instruction No. 4.15.[4] Specifically, the prosecutor pointed to the last two paragraphs of the instruction which provide, in essence, that a citizen may not use force to resist an illegal arrest but may only defend himself against excessive force used in effecting an arrest.

Appellant's counsel, on the other hand, argued that the trial court should give the general self-defense instructions ordinarily used in simple assault cases because (1) the government had not charged appellant with the crime of assault on a police officer but only with simple assault and (2) "[t]here wasn't any testimony from any of the witnesses that at the point the officer grabbed Mr. Speed, that there was any attempt to make an arrest, that there was any concern about making an arrest...." Defense counsel further argued to the court that "in order to even consider that instruction [assault on police officer], the court would have to find that at the time the officer grabbed Mr. Speed, that the officer intended to effectuate or make an arrest." The defense submitted a proposed instruction which incorporated segments of various standard instructions suitable for a simple assault case.

The trial court ultimately ruled that it would instruct the jury that "it is the defendant's theory of the case that Mr. Jonathan Speed did not assault [the complainant] ... rather it is the theory of the defense that Mr. Speed defended himself when he struck [the complainant]. And then I will explain what a person may do in

3. The prosecution urged, as its "first-line" position, that there was *no* evidence from which a reasonable juror might find the Metro Transit officer had employed "excessive force."

4. All references to "standard" or "standardized" instructions refer to Criminal Jury Instructions for the District of Columbia (3d ed. 1978).

a situation such as this by reading the last two paragraphs of [the Standard Instruction for Assault on a Police Officer]." Those paragraphs state:

A person acts without justifiable or excusable cause if he assaults, resists, opposes, impedes, intimidates, or interferes with a police officer while the officer is engaged in the making or maintaining of an arrest, regardless of whether or not the arrest was lawful, provided that the officer uses only such force as appears reasonably necessary under the circumstances to effect and maintain the arrest. In making and maintaining the arrest, the measure of reasonable force is that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary.

If the officer employs greater force than appears reasonably necessary under the circumstances to effect or maintain the arrest, the person sought to be arrested may defend himself against the officer's excessive force by using such force as appears reasonably necessary under the circumstances to protect himself. If the person sought to be arrested defends himself against the excessive force by using only such force as appears reasonably necessary under the circumstances to protect himself, he acts with justifiable and excusable cause. If he uses greater force than appears reasonably necessary under the circumstances, however, he acts without justifiable or excusable cause.

## II.

As we have noted, appellant argued to the trial court that, once the government determined to prosecute him for simple assault, the fact that the victim of such assault was a police officer became irrelevant. Therefore, in his view, *no* instruction relating to the separate offense of assault on a police officer might lawfully be given to the jury. Additionally, appellant argued that in any event there was *no evidence* that when he had struck the complaining officer the officer had been attempting to make an arrest.[5] For these reasons, appellant asserted, the only appropriate instructions to the jury would be those concerning self-defense generally.[6] We are not so persuaded.

 While as a general rule an individual has a right to defend against the use of force by another, Congress has enacted D.C.Code § 22–505 (1981), which limits that right when the person using force is a police officer engaged in official police duties. We note that this court expressly has held that since the crime of simple assault is a lesser included offense of assault on a police officer, the Congressional policy contained in its amendment to the statute defining the offense of assault on a police officer, D.C.Code § 22–505, is also applicable to the offense of simple assault. *McDonald v. United States*, 496 A.2d 274, 276 (D.C.1985). We think that reasoning must apply to the policy underlying the whole of § 22–505. Thus, when an individual is approached by a police officer acting in an official capacity, the individual's right of self-defense is limited, and a jury charged with deciding whether the individual's assault upon the officer is justified must be so instructed. Therefore, the trial

5. On appeal, appellant does concede that "any action ... short of a full-blown arrest is also protected under D.C.Code § 22–505 when such action is intended to detain the suspect (*i.e.* a *Terry* stop)."

6. We note that there is a significant difference between the general instructions on self-defense normally given a jury in a simple assault case and the instruction required in an assault on a police officer case (APO). As appellant notes in his brief, the language on self-defense given to the jury in a simple assault case calls for the jurors to determine *from the defendant's van-*

*tage point* whether the defendant reasonably believed that force was about to be used against him and whether the amount of force the defendant used was reasonably necessary under the circumstances. In contrast, the language in the charge to the jury in the APO case charges the jurors first to determine the reasonableness of the officer's conduct vis-a-vis the defendant *from the officer's vantage point*. Then, if the jury finds the officer's force was excessive, it determines from the defendant's vantage point whether the force employed by the defendant was reasonably necessary.

court correctly declined to rule that it is irrelevant that the victim in a simple assault case is a police officer.[7]

We further note that when Congress amended D.C.Code § 22–505, it made clear that the common law right to defend one's self against an illegal arrest henceforth did *not* apply in the District of Columbia. *See McDonald, supra,* 496 A.2d at 276. In adopting this rule, Congress recognized the difficulty of determining the legality or illegality of an arrest and the dangers inherent, in today's modern world of weaponry, in allowing forcible confrontations between an arresting officer and the arrestee. Moreover, a subject of an illegal arrest has prompt and adequate remedies at law. *See, e.g.,* D.C.Code § 23–562(c) (1981) (arrested person must be taken before court without unnecessary delay); *Phillips v. District of Columbia,* 458 A.2d 722, 725 (D.C.1983) (loss of liberty per se basis for compensatory damages in false arrest case). Accordingly, the use of force to resist an arrest is not necessary to protect the liberty interest involved. *See* District of Columbia Court Reform and Criminal Procedure Act of 1970, H.R.Rep. No. 907, 91st Cong., 2d Sess. 70–73. The 1970 amendment to § 22–505, however, was intended to eliminate only the right to resist an illegal arrest. The amendment "in no way change[d] the right of a citizen to defend himself against an officer's excessive force." *Id.* at 70.

■ There now exists an entire spectrum of encounters between police and citizens, ranging from investigatory questioning, to stops and detainments permissible under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to temporary custody, and finally to arrest. Forcible resistance to any one of this myriad of contacts presents no less danger than forcible resistance to arrests. And as with arrests, the legality of these contacts may be difficult to determine, thus making the courts the most effective forum for seeking a remedy for an officer's illegal interference with a citizen. Therefore, the use of force

against an officer who is attempting to detain a citizen for any legitimate purpose associated with official police duties must be limited only to defense against excessive force. *See Booker v. United States,* 283 A.2d 446 (D.C.1971) (no right to resist enforcement of valid order regardless of whether arrest being made). *See also State v. Mulvihill,* 57 N.J. 151, 155–56, 270 A.2d 277, 279 (1970) (citizen must submit peaceably to an apparently lawful arrest or other apparently lawful restraint by a police officer); *State v. Botelho,* 459 A.2d 947, 951 (R.I.1983) (citizen's right to defend against excessive force does not depend on an arrest).

■ We agree with the government and the trial judge that the last two paragraphs of the standard assault on a police officer instruction accurately reflect the limits on the use of force to resist an arrest. Nevertheless, these paragraphs do not instruct on a defendant's right to defend himself or herself when *no* arrest is being made. We think these standard instructions need amendment to reflect the application of the law, which the instructions accurately state for arrests, to the entire range of police-citizen encounters. The trial court's instructions to the jury on when the use of force against a police officer is justified were thus incomplete.

The trial court's instructions were also incomplete because it read from the standard assault on a police officer instruction *only* the two paragraphs dealing with excessive force. Once a defendant raises the defense of justified self-defense, the government then bears the burden to prove beyond a reasonable doubt that the defendant was *not* acting with justification or a legal right. To carry this burden in a case such as this where the complainant is a police officer, the government must prove that the predicate facts limiting the defendant's right to defend himself or herself were present: that the victim was a police officer; that the officer was engaged in official duties at the time of the assault; and that the officer was not using exces-

---

7. We are not here holding that assault on a police officer instructions are necessary in every simple assault case in which the victim is a police officer.

sive force. In sum, if the court grants the government's request for instructions stating that the defendant has only a limited right of self-defense because of the status and role of the victim (*i.e.*, a police officer carrying out official duties), the court must also instruct the jury on all the elements which require this limiting of that defense.

■ Finally, we think the court erred in failing also to specifically instruct the jury that the government had the burden of proof on the issue of self-defense or justification. The government with commendable candor acknowledges that the instruction generally given on self-defense, Standardized Criminal Jury Instruction No. 5.13, places the burden, "[w]here evidence of self-defense is present," on the government to prove beyond a reasonable doubt that the defendant did not act in self-defense.[8] The standard assault on a police officer instruction also instructs the jury that as an element of that crime the government must prove *beyond a reasonable doubt* that the defendant assaulted the police officer "without justifiable and excusable cause." No such instruction was given in the instant case.[9]

It would be anomalous, as well as inequitable, for the prosecution to avoid carrying the burden of proof detailed above merely by choosing, in the exercise of its prosecutorial discretion, to charge with simple assault a defendant who strikes a police officer and then claims self-defense. In our view it is necessary for the trial court, whenever it is called upon to instruct a jury on self-defense in a simple assault case where the complainant is a police officer, to explicitly state to the jury that it is the government's burden to disprove, beyond a reasonable doubt, a claim of self-defense or justification raised by the defendant.

In sum, the trial court should instruct the jury that in order to prove simple assault when the victim is a police officer and the defendant raises the defense of self-defense, the government must prove beyond a reasonable doubt:

(a) That at the time of the alleged assault the complainant was a member of a police force operating in the District of Columbia, the defendant did know or had reason to know that the complainant was a member of such force, and the officer was engaged in official police duties; and

(b) That the defendant assaulted the officer without justifiable and excusable cause;[10] and that

(c) A person acts without justifiable or excusable cause if the person assaults, resists, opposes, impedes, intimidates, or interferes with a police officer while the officer is engaged in the making or maintaining of any stop or detainment for a legitimate police purpose, regardless of whether or not the stop or detainment was lawful, provided that the officer uses only such force as appears reasonably necessary under the circumstances to effect the stop or detainment. In making and maintaining the stop or detainment, the measure of reasonable force is that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the officer, would have deemed necessary.

If the officer employs greater force than appears reasonably necessary under

---

**8.** In our opinion this is a case where there was some evidence supporting the defendant's theory of the case, so that appellant was entitled to instructions on his defense theory. Appellant's testimony was evidence from which the jury could have concluded that the officer was not making an arrest or otherwise approaching appellant for any legitimate police purpose. "A defendant is entitled to a jury instruction on a 'theory of the case that negates his guilt of the crime charged' if the instruction is supported by 'any evidence, however weak.'" *See Graves v. United States,* 554 A.2d 1145, 1147 (D.C.1989) (citation omitted).

**9.** The government points out that the charge by the trial judge contained, in several places, the standard instructions that the government had the burden of proving beyond a reasonable doubt the defendant's guilt. However, this instruction was not specific enough under the circumstances of this case where the defense theory was self-defense.

**10.** We think the elements that we have summarized in paragraphs (a) and (b) above are adequately and fairly stated in paragraphs 1 through 6 of the current edition of the Standardized Instruction for Assault on Police Officer.

the circumstances to effect or maintain the stop or detainment, the person sought to be stopped or detained may defend against the officer's excessive force by using such force as appears reasonably necessary under the circumstances to protect himself or herself. If the person sought to be stopped or detained defends against the excessive force by using only such force as appears reasonably necessary under the circumstances to protect himself or herself, the person acts with justifiable and excusable cause. If the person uses greater force than appears reasonably necessary under the circumstances, however, the person acts without justifiable and excusable cause.

The court should instruct the jurors that if they do not find that the government has met its burden of proof on (a), the defendant was entitled to defend himself or herself against the use of any force and instructions (b) and (c) are inapplicable to their determination. The court then should instruct on the general right of self-defense, explicitly informing the jury that the government bore the burden of proving beyond a reasonable doubt that appellant was not acting in self-defense.

### III.

In the instant case, the government argues that the trial court's instruction, which encompassed language similar to paragraph (c) above but failed to contain the language of paragraphs (a) and (b) above, constituted only harmless error. It argues that we can deduce from the jury's verdict of guilty upon the particular facts here that the jurors disbelieved appellant's testimony, because otherwise they would have concluded that appellant had in fact acted *with* justifiable and excusable cause. We are not so persuaded.

If the jury had believed appellant's testimony and had been properly instructed, they would have been at liberty to conclude that at the time the officer approached appellant he was not engaged in official police duties, but rather was about to do harm to appellant for personal motives.

However, the instructions, as given by the conscientious trial judge, did not leave them the option of so finding or instruct them as to the law if they did so find. *See Kind v. United States*, 529 A.2d 294, 297 (D.C.1987) (Mack, J., concurring) (questions of fact on all elements of the crime must be submitted to jury).

Furthermore, because the instructions read to the jury mentioned only arrest, the jury could have believed that the judge had himself decided that an arrest was in fact taking place at the time of the assault. As we have noted, it is up to the jury to decide whether the force used by the officer was reasonable under the circumstances. Force used to effect an arrest may be reasonable, while that same force may be unreasonable to detain an individual merely for questioning. Thus, the court's use of the term "arrest" in the instructions may have influenced the jury's judgment as to whether the force about to be used by the officer was excessive.

Concluding that the jury was not fully and hence not properly instructed on the law, and that the error was not harmless, we must reverse and remand for a new trial so that the jury may be fully instructed.

*So Ordered.*