**Delbert BAULDOCK, Jr., Appellant,**

v.

**DAVCO FOOD, INC., Appellee.**

**No. 91–CV–1372.**

District of Columbia Court of Appeals.

Argued Jan. 21, 1993.
Decided March 16, 1993.

Robert L. Bell, Washington, DC, for appellant.

George T. Masson, Jr., Washington, DC, for appellee.

Before TERRY and KING, Associate Judges, and GALLAGHER, Senior Judge.

TERRY, Associate Judge:

This is an appeal from a trial court order granting appellee's motion for judgment notwithstanding the verdict. A jury awarded appellant Bauldock $25,000 on a false arrest claim and $25,000 on an assault and battery claim. Several days later appellee Davco Food, Inc., moved for judgment n.o.v., and the trial court granted the motion. Because we conclude that the trial court was correct in holding that no reasonable jury could find for appellant, we affirm.

I

A. *The Evidence* [1]

One evening in October 1985, appellant Bauldock, who was then a law student, received a telephone call from his friend Raymond Brown, a fraternity brother from his college days. Because they had not seen each other for quite a while, Brown persuaded Bauldock to "go out and relax" because he had been "studying too hard." They went to a club shortly after 11:00 p.m. and had "a couple of beers" there. Then they decided to get something to eat and drove to a Wendy's fast-food restau-

---

1. Although in some respects appellant's rendition of the facts was disputed, on this appeal we must view the facts in the light most favorable to appellant, the party who secured the favorable jury verdict. *See Finkelstein v. District of Columbia,* 593 A.2d 591, 594 (D.C.1991) (en banc); *Spain v. McNeal,* 337 A.2d 507, 508 (D.C. 1975); *Morgan v. District of Columbia,* 263 U.S.App.D.C. 69, 76, 824 F.2d 1049, 1056 (1987) ("we are required to evaluate the evidence under the presumption that the jury resolved all

rant[2] at Florida and New York Avenues, N.E. After they had picked up their food at the counter and sat down to consume it, Brown walked over to two women seated at another table and tried to strike up a conversation with them. After a couple of minutes, however, Brown returned to his own table and sat down again with Bauldock.

Wayne Hayes, a Metropolitan Police officer, off duty but in uniform, was working part-time as a security guard at the restaurant. A few moments after Brown had gone back to his own table and sat down, Hayes approached Bauldock and Brown and told them to leave.[3] Bauldock replied that he had not done anything wrong and that he would leave when he finished eating. Hayes said nothing in reply, so Bauldock continued to eat. When he finished, he left the restaurant and started walking across the parking lot toward Brown's car, in which both of them had come. Almost immediately, however, he realized that Brown was still inside, so he turned and headed back toward the restaurant. Just as he entered the vestibule, he saw Brown on the floor of the restaurant and Officer Hayes putting handcuffs on him. When Bauldock, still standing in the vestibule, asked why Brown was being arrested, Officer Hayes first told him to "get out of here," but then added, "You're next." Bauldock "backed out of the doorway" and stood outside at the entrance to the restaurant. The officer came out and ordered Bauldock to lie on the ground; Bauldock refused, and a struggle ensued. The officer grabbed Bauldock around the neck, and within minutes other Metropolitan Police officers arrived on the scene. After a short conversation between Hayes and one of those officers, Bauldock was struck on the head with a club and handcuffed.[4] He was then taken to the police station and charged with disorderly conduct.

Officer Hayes testified that he had been hired by Kenneth Rogers, another Metropolitan Police officer who was "basically the one who runs Wendy's," to work at Wendy's during his off-duty hours and "maintain security" there. Hayes said there were five Wendy's restaurants in that part of town, "and we'd be assigned to different ones [on] different nights. You never worked basically the same one all the time. You were assigned to different ones according to your work schedule." Rogers was in charge of all the work assignments; "he tells you what he wants done, because Wendy's management tells him what they want done, and that's what he goes by." According to Hayes, there was no specific orientation or training given by Wendy's (*i.e.*, by Davco); however, Officer Rogers told Officer Hayes to watch the cash registers, the parking lots, and the loading area, and to make sure there were no disturbances inside or outside the restaurant.

With respect to his work at this particular Wendy's, Hayes said, the manager had told him that he had the authority to direct people to leave the restaurant without first clearing it with the manager. Hayes testified that in all respects his duties and responsibilities were no different from those of any other off-duty police officer:

> I had the same arrest powers that [other off-duty officers] had. Even when I am off duty, I come [into] the District, I still have my police powers 24 hours a day. If any crime happens in my presence, I am required to take police action.

factual disputes in favor of the prevailing party").

2. This Wendy's restaurant was owned and operated by appellee Davco, as were several others in the Washington metropolitan area.

3. Officer Hayes testified that the women had complained they were being harassed by Bauldock and Brown.

4. It was later established that Officer Allen Lester, one of the newly arrived officers, was the one who struck Bauldock on the head. Bauldock initially named Lester in his complaint as a defendant, along with his employer, the District of Columbia. The District, however, entered into a settlement which included a release from Bauldock, and the case proceeded to trial only against Davco. Although it is not entirely clear from the record, the settlement and release apparently disposed of the claim against Officer Lester as well as the claim against the District.

*See* D.C.Code § 4–142 (1988) (prescribing penalty for any officer who neglects to make an arrest for an offense committed in his or her presence); 6A DCMR § 200.4 (1988) ("[m]embers of the force shall be held to be always on duty"). At the time of the events at issue in this case, Officer Hayes stated, he was dressed in his police uniform, as police regulations required him to be when working in off-duty status. He was also in possession of "all the police equipment that's required of me," including a badge, a gun, a baton, a slapjack, and a pair of handcuffs.

At the close of all the evidence, Davco moved for a directed verdict on several grounds. After hearing arguments related to the motion, the trial court took it under advisement for resolution after the verdict.[5]

### B. *The Post–Verdict Motion*

Following the verdict in Bauldock's favor, Davco filed a motion for judgment n.o.v., making three arguments in support of the motion: first, that the "undisputed evidence established that probable cause existed for Wayne Hayes to arrest [Bauldock]"; second, that Bauldock "settled all claims which he may have had against Wayne Hayes and, through him, [Davco]"; and third, that Bauldock "was not subjected to an assault and battery for which [Davco] is liable in the context of his arrest." The trial court granted the motion. It held initially that "upon the evidence in this case, probable cause existed for Hayes to arrest [Bauldock] as a matter of law." The court also ruled that, while it was true that "[i]f Hayes had been acting as the employee-servant of Davco at the time of his act, his release would have also operated to release Davco," it was more accurate to state "that no liability ever attached to Davco by reason of any arrest or assault and battery by Hayes because in making such arrest or committing such assault and

battery, if any, Hayes was not acting in his capacity as the employee-servant of defendant Davco." Finally, the court said that "there was no evidence tending to show that defendant Davco had authorized Hayes to make any arrest or that defendant Davco had ordered Hayes to arrest [Bauldock]."

### II

■ Bauldock contends that Davco's motion for judgment notwithstanding the verdict was untimely. This contention is entirely without merit.

The jury returned its verdict on December 3. Although the record is not entirely clear, it appears that a judgment on that verdict may have been filed the same day. The motion for judgment n.o.v. was filed on December 17, fourteen calendar days later. Under Super.Ct.Civ.R. 50(b), a motion for judgment n.o.v. must be made "[n]ot later than ten days after entry of judgment...." In computing the ten days, however, Super.Ct.Civ. 6 instructs that "[w]hen the period of time prescribed or allowed is less than eleven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded." There were (and always are) two Saturdays and two Sundays between December 3 and December 17, and under Rule 6 those Saturdays and Sundays do not count toward the ten-day limit. December 17 was therefore the tenth day other than a Saturday or Sunday after December 3, and the motion was timely filed.[6]

### III

■ The entry of a judgment notwithstanding the verdict is "appropriate to remove from jury consideration those cases in which the facts, viewed most favorably to the nonmoving party, permit but one reasonable conclusion as to the proper judgment." *Vassiliades v. Garfinckel's,*

5. *See, e.g., Adams v. A.B. & A., Inc.,* 613 A.2d 858, 861 (D.C.1992); *Moss v. Stockard,* 580 A.2d 1011, 1017 (D.C.1990); *Faniel v. Chesapeake & Potomac Telephone Co.,* 404 A.2d 147, 150 (D.C. 1979); 9 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2537, at 600 n. 42 (1971).

6. Of course, if no judgment was ever entered on the jury's verdict, which may have been the case (as we said, the record is not clear), then the ten-day period never even began to run, and the motion was timely for that reason.

*Brooks Brothers, Miller & Rhoades, Inc.,* 492 A.2d 580, 586 (D.C.1985) (citations and internal quotation marks omitted); *see Lewis v. Washington Metropolitan Area Transit Authority,* 463 A.2d 666, 669 (D.C. 1983) (judgment n.o.v. may be granted "only when the evidence, viewed in the light most favorable to the nonmoving party, permits only one reasonable conclusion as to the proper judgment" (citations omitted)). If a case is allowed to go to the jury, and the jury returns a verdict which is unreasonable when the evidence is viewed in the light most favorable to the prevailing party, the entry of a judgment n.o.v. is the appropriate remedy. *Finkelstein, supra* note 1, 593 A.2d at 594; *Faniel, supra* note 5, 404 A.2d at 150. On appeal from the denial of such a motion, "our inquiry replicates that of the trial court." *Washington v. Washington Hospital Center,* 579 A.2d 177, 181 (D.C.1990) (citations omitted).

■ In this case the trial court ruled that, as a matter of law, Officer Hayes had probable cause to arrest Bauldock, and that Bauldock therefore could not prevail on the false arrest count in his complaint. We agree. This court has held:

> The issue of probable cause for false arrest is a mixed question of law and fact.... Where the facts are in dispute, the issue of probable cause is for the jury, but where the facts are undisputed or clearly established, a question of law arises for the court.

*Safeway Stores, Inc. v. Kelly,* 448 A.2d 856, 862 (D.C.1982) (citations omitted). In this case, as the trial judge wrote in his order, "[t]he undisputed evidence shows that Hayes had ordered [Bauldock] and his companion, Brown, out of Wendy's when a patron complained that they were annoying her," and Bauldock did not comply with this order. Officer Hayes clearly had probable cause to arrest Bauldock at that point for unlawful entry.

■ Under D.C.Code § 22–3102 (1989),[7] one who lawfully enters a building may be guilty of a misdemeanor by refusing to leave after being ordered to do so by the person lawfully in charge of the premises. *See Feldt v. Marriott Corp.,* 322 A.2d 913, 915 (D.C.1974); *accord, O'Brien v. United States,* 444 A.2d 946, 948 (D.C.1982) ("[t]he mere demand of the person lawfully in charge to leave necessarily deprives the other party of any lawful authority to remain"). The unlawful entry statute permits a person lawfully in charge of premises to act through an agent, including the police, *Grogan v. United States,* 435 A.2d 1069, 1071 (D.C.1981), and in the present case the undisputed testimony of Officer Hayes disclosed that he had such authority. Bauldock, by his own testimony on direct examination, revealed that he did not comply with the order to leave the restaurant:

> Q. And after he [Officer Hayes] asked you to leave the restaurant, did you leave?
>
> A. No, I did not.

Viewing the evidence of probable cause from the perspective of the arresting officer and not the plaintiff, *Dent v. May Dep't Stores Co.,* 459 A.2d 1042, 1044 (D.C.1982); *Prieto v. May Dep't Stores Co.,* 216 A.2d 577, 579 (D.C.1966), we are satisfied that no reasonable jury could conclude that Officer Hayes falsely arrested Bauldock.[8]

■ More significant for Davco is the trial court's conclusion that "[t]here was no evidence tending to show that defendant Davco had authorized Hayes to make any arrest or that defendant Davco had ordered Hayes to arrest this plaintiff.... Hayes

---

7. Section 22–3102 provides in part:

    Any person who, without lawful authority, shall enter, or attempt to enter, any public or private dwelling, building or other property ... against the will of the lawful occupant or of the person lawfully in charge thereof, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand ... of *the person lawfully in charge thereof,* shall be deemed guilty of a misdemeanor....

8. As Davco correctly points out, the fact that Bauldock was not told specifically that he was being arrested for unlawful entry (as opposed to some other crime) does not affect the propriety of the arrest. *See United States v. Hamilton,* 390 A.2d 449, 451 (D.C.1978) ("the validity of an arrest does not depend on the characterization given the underlying crime by the arresting officer" (citing cases)).

was not acting within the scope of his employment with defendant Davco when he undertook the arrest and did arrest plaintiff." The court summarized the undisputed evidence in its order:

> Hayes was a Metropolitan Police Officer.... At that time, Metropolitan Police Officers were permitted to have off-duty employment with private employers, and Hayes had obtained such employment with defendant Davco as a security guard, to protect the premises and patrons of Wendy's restaurant.... Davco's "Job Description" of the duties that police officers, such as Hayes, were to perform, stated: "Each Metropolitan Police Officer employed ... will enforce security in accordance with the District of Columbia Code of Criminal Law and the guidelines of the Metropolitan Police Department."

■■■ A person making a lawful arrest may be liable for assault and battery if that person uses excessive force. *Safeway Stores, Inc. v. Kelly, supra,* 448 A.2d at 863; *see Jackson v. District of Columbia,* 412 A.2d 948, 956 (D.C.1980). Additionally, the employer of a person using excessive force against another may be liable for that tortious act if that act is within the scope of employment. *Weinberg v. Johnson,* 518 A.2d 985, 990 (D.C.1986). If the tortious act is committed outside the scope of employment, however, or if the person hired is deemed an independent contractor, the employer or contractee is not liable for injuries to the plaintiff. *See Levy v. Currier,* 587 A.2d 205, 209 (D.C.1991). The case at bar does not fit neatly within the "scope of employment" analysis or the "independent contractor" analysis found in various opinions from this court over the last several years. *See, e.g., District of Columbia v. Howell,* 607 A.2d 501, 504–506 (D.C.1992); *Weinberg v. Johnson, supra,* 518 A.2d at 988–993; *Safeway Stores, Inc. v. Kelly, supra,* 448 A.2d at 860–862; *Johnson v.*

*Weinberg,* 434 A.2d 404, 407–409 (D.C. 1981). But there is one case, quite old but still sound, which specifically addresses the issue raised here. That case is *Wells v. Washington Market Co.,* 19 D.C. (8 Mackey) 385 (1890). We find it to be indistinguishable from the present case on its material facts and hence dispositive of this appeal.

In *Wells* the Washington Market Company hired William Capner, an off-duty Metropolitan Police officer, to perform several functions at its market. He was "employed ... as a collector of rent for the stalls and had general authority to keep order; that is, [to] regulate places for selling and prevent any disorder, and expel any disorderly person from the market...." *Id.* at 390. Like Officer Hayes in the case at bar, however, Capner "had no authority *from them* [Washington Market Company] to make arrests." *Id.* (emphasis in original). Suit was brought against the market for the alleged false arrest of a patron of the market by Officer Capner.[9] In reversing a judgment for the plaintiff, the court said:

> [T]here can be no doubt at all [that] if he had been an officer regularly employed by the District authorities, and had simply been detailed for service at the market, the company would not have been in the slightest degree responsible for any abuse of his authority as such officer. The only thing that is apt to leave some confusion in our minds is this dual employment by him, in the character of agent of the company and agent of the public.... [T]here is no doubt he can perform some duties in one character that he cannot in the other.

*Id.* at 393. Ruling that judgment should have been entered in favor of the market, the court held:

> [T]he officer perhaps had more inclination to show superserviceable zeal in behalf of the interests of the [market] com-

---

**9.** A woman's purse was stolen just outside the market, and a bystander reported the robbery to Officer Capner and "pointed out [Mr. Wells] as the thief." 19 D.C. at 389. Capner arrested him, handcuffed him, and started to take him to the police station; "but before he emerged from the building, he was informed by a lady who had witnessed the robbery, that he was not the man, and he was thereupon released. Now, there is no doubt this man was perfectly innocent." *Id.*

pany. Nevertheless, his appointment under these circumstances did not change, in the slightest degree, his duties and his responsibility as an officer of the Metropolitan Police force, *and we consider this arrest to have been made in virtue of that authority, and not as the agent of this company, and they ought not to be held responsible.*

*Id.* at 398 (emphasis added).

There is no material difference between *Wells* and the case at bar. We therefore hold, following *Wells*, that Officer Hayes' arrest of Bauldock was made pursuant to his authority as a Metropolitan Police officer, not as Davco's agent or employee. Davco cannot be held liable for an act which the officer was required by statute and regulation [10] to perform as a Metropolitan Police officer even while off duty.

It follows that the evidence, even when viewed most favorably to Bauldock, was insufficient as a matter of law to support the jury verdict in his favor. The judgment n.o.v. in favor of Davco must be and is

*Affirmed.*

---

10. D.C.Code § 4–142 (1988); 6A DCMR § 200.4 (1988).