*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CM-418

RICKEY GRAVES, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-463-19)

(Hon. Harold L. Cushenberry, Trial Judge)

(Submitted October 6, 2020                    Decided February 25, 2021)

*Jeffrey Light* for appellant.

*John P. Mannarino*, Assistant United States Attorney, with whom *Jessie K. Liu*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, Assistant United States Attorney, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and GLICKMAN, *Associate Judge*, and WASHINGTON, *Senior Judge*.

GLICKMAN, *Associate Judge*:   Rickey Graves appeals his misdemeanor convictions in a bench trial for assault[1] and second-degree theft.[2]   He contends, *inter alia*, that the trial court violated his constitutional rights by not allowing him to testify that he acted in self-defense, which the court itself described as "[t]he only unresolved issue[]" in the trial.   Because we agree with appellant that the court erred, that he did not waive or forfeit his claim of error, and that the constitutional error was not harmless beyond a reasonable doubt, we reverse appellant's conviction for simple assault.   We affirm his theft conviction.

## I.

On January 9, 2019, Officer Marc Boucheron of the Metropolitan Police Department (MPD) was working in the security office of a local grocery store. Watching the security cameras, Officer Boucheron saw appellant go to the beer and wine section, put a bottle of wine in his pants, and then walk toward the exit of the store without paying.   Officer Boucheron, who was in full police uniform, left the security office and followed appellant.   Catching up to him in the store's vestibule, Officer Boucheron grabbed appellant "close to his neck."   A struggle

---

[1]   D.C. Code § 22-404 (2012 Repl.).

[2]   D.C. Code § 22-3211 (2012 Repl.).

ensued, during which appellant bit Officer Boucheron's hand. Appellant was charged with second-degree theft for taking the bottle of wine and simple assault for the biting.

In his opening statement at trial, appellant's counsel indicated that he would contest only the assault charge. Counsel claimed that video footage from Officer Boucheron's body-worn camera would show that appellant bit the officer in self-defense because Officer Boucheron used excessive force by grabbing him around the neck and choking him.[3] The judge, who earlier had expressed his understanding that self-defense was "[t]he only unresolved issue[]" to be tried, commented that it "might be excessive" to "put [a suspect] in a chokehold for a theft case." The judge stated he would watch the video footage to see "if I think the force was excessive, . . . [b]ut [appellant]'s not going to be able to say he acted in reasonable self-defense unless there was excessive force."

---

[3] *See Speed v. United States*, 562 A.2d 124, 128–29 (D.C. 1989) (holding that when a defendant charged with simple assault against a police officer invokes the "limited right of self-defense," the government must prove beyond a reasonable doubt that "the victim was a police officer . . . engaged in official duties at the time of the assault," and "that the officer was not using excessive force").

Officer Boucheron was the government's only witness. He testified on direct examination that once he caught up with appellant, he asked him to "stop and hand over the product." Appellant pulled the bottle out of his pants and held it "by the . . . neck." Officer Boucheron said it appeared to him that appellant could "use it as a weapon." The officer testified that he placed one hand on appellant's chest and held onto his shirt, at which point appellant "came down and bit [him] on the hand." Officer Boucheron then used "loud verbal commands" and "several . . . hand strikes to . . . get [appellant] to . . . comply." Appellant and Officer Boucheron fell to the ground, and the officer was able to place appellant in handcuffs.

On cross-examination, Officer Boucheron agreed that appellant did not threaten him with the bottle. Defense counsel then confronted Officer Boucheron with the footage of appellant's arrest from the officer's body-worn camera, attempting to establish through cross-examination that it showed Officer Boucheron grabbing appellant not by the shirt, but violently and by the neck.[4] The officer denied grabbing appellant "around the neck," asserting that it "looks like the collar[,] if anything." On redirect examination, the prosecutor asked Officer

---

    [4] The footage was admitted into evidence as a defense exhibit without objection.

Boucheron, "when you grabbed him up here near his neck, were you grabbing onto his body or the clothing?" "Clothing," the officer stated.

Appellant's biting of Officer Boucheron's hand was not visible in the body-camera footage. On redirect examination, though, Officer Boucheron confirmed that appellant bit him early in the encounter, "[a]s soon as we went around."

After redirect examination, the government rested its case and appellant moved for a judgment of acquittal. The trial judge denied the motion. The judge acknowledged that Officer Boucheron "certainly grabbed [appellant] in his throat area" and "[appellant] kept saying don't choke me" (which could be heard on the body-camera footage). Nonetheless, the judge then stated, "I don't think there's any self-defense on this record, and I'm not going to permit any self-defense testimony because I don't think the [officer's] use of force as a matter of law on these facts was excessive." The judge told appellant that he could testify "about anything else," but "if he doesn't want to testify, I'll do the *Boyd* inquiry."[5]

---

[5] *Boyd v. United States*, 586 A.2d 670, 678–79 (D.C. 1991) (suggesting that a trial court should "make . . . an on-the-record inquiry" to determine whether a criminal defendant made a knowing and intelligent waiver of his constitutional right to testify).

Defense counsel did not object to the trial judge's ruling and said appellant would not testify and had no further evidence to present. Addressing appellant directly, the judge confirmed that, "in light of my ruling [that] I'm not going to permit a self-defense claim," appellant had decided to rest his case without taking the stand and testifying on his own behalf. The judge was satisfied that appellant "made a knowing, intelligent, and voluntary decision not to become a witness in this case."

After closing arguments, the trial judge found appellant guilty on both charges. In addressing the assault charge, the judge found that Officer Boucheron "didn't give [appellant] much opportunity to submit," that he "grabbed [appellant] in the area that was certainly close to his neck," and that the force was "certainly . . . violent." Nonetheless, the judge ruled that Officer Boucheron did not use excessive force against appellant, and therefore appellant was not justified in biting him.[6]

---

[6] The judge did not make clear why he concluded that Officer Boucheron did not use excessive force against appellant when he grabbed appellant at the outset of the stop. The judge did not make a finding that appellant was not being choked at that point, and what the body-camera footage shows as to that question is unclear to us.

## II.

Appellant's principal claim on appeal is that the trial judge violated his constitutional right to present a complete defense by precluding him from testifying to refute the government's showing on the issue of excessive force. In response, the government argues that appellant waived the claim and, alternatively, that he has not shown plain error.

## A.

The government argues that appellant waived his constitutional claim by inviting the error in his opening statement. It points to defense counsel's opening remarks that:

> [I]t's the [g]overnment's burden to prove beyond a reasonable doubt that the force used by the officer was reasonable. It's not our burden to prove anything. In this case, there's body worn camera of this. *We don't hardly need testimony, and we certainly don't need testimony looking back saying this is what happened when we can see it ourselves on the body worn camera.* (Emphasis added.)

The government homes in on the italicized comment, arguing that it induced the error by "inviting the court to rely on the video in lieu of testimony."

"Generally, the invited error doctrine precludes a party from asserting as error on appeal a course that he or she has induced the trial court to take."[7] We are not persuaded that defense counsel's remarks in the opening statement induced, or were in any way to blame for, the challenged judicial ruling in this case. Counsel simply expressed confidence that the camera footage so clearly showed excessive force that the government would not be able to shoulder its burden of proof, and that the defense therefore would not "need" to present additional evidence to be entitled to an acquittal at the close of the government's case. Counsel never said he would refrain from presenting evidence supplementing the video footage if the court denied his MJOA and it became necessary for the defense to do more to rebut the reasonableness of Officer Boucheron's use of force, and counsel certainly did not invite a ruling prohibiting appellant himself from testifying on the issue. In fact, the judge's ruling does not suggest it was defense counsel's opening statement that induced him to rule as he did, as the judge did not mention counsel's opening remarks at all and instead explained that he was barring "any self-defense testimony" simply because, in the judge's view of the evidence presented up to that point, he did not "think" Officer Boucheron had used excessive force.

---

[7] *Preacher v. United States*, 934 A.2d 363, 368 (D.C. 2007).

Consequently, we reject the government's argument that appellant waived his claim of constitutional error by inviting the judge to preclude his testimony.

**B.**

The government argues that even if appellant did not waive his constitutional claim, he nonetheless forfeited it by failing to object to the trial judge's ruling, and the claim therefore is subject to "the strictures of 'plain error' review."[8] But in the highly unusual circumstances of this case, we disagree with that argument as well.

We will not "apply plain error review in a rigid fashion which elevates form over the practical dynamics of trial litigation."[9] We can consider more than just the presence or absence of a contemporaneous objection. For example, we have

---

[8] *Thomas v. United States*, 914 A.2d 1, 8 (D.C. 2006). Under the test for plain error, appellant must show not only that the trial court committed an error, but also that the error is "plain" and affected the appellant's "substantial rights." *Id.* (citing *Johnson v. United States*, 520 U.S. 461, 467 (1997)). If all three of those conditions are met, an appellate court may exercise its discretion to grant relief from a forfeited error, "but only if . . . the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Johnson*, 520 U.S. at 467).

[9] *Brown v. United States*, 726 A.2d 149, 154 (D.C. 1999).

held that a claim is not forfeited where, despite defense counsel's failure to object, the trial judge demonstrably was aware of the potential error and broached it *sua sponte*.[10] When that is so, we have explained, the purpose of requiring a timely objection to the error, which is "to alert the trial court and give it an opportunity to correct the error," has been met.[11]

We find that to have been the situation here. The trial judge twice raised *sua sponte* the possibility that he had ruled incorrectly by forbidding appellant to testify that he acted in self-defense. The judge explicitly stated, immediately after he precluded appellant's testimony, that appellant would "have the excessive force issue that he can raise on appeal as a matter of law that I incorrectly decided and precluded him from offering reasonable self-defense." Clearly, the judge realized he might have made a serious error, at a time when he still could have corrected it; and by assuring appellant on the record that he could raise the issue on appeal, the judge obviated any further need for appellant to take exception to the ruling. Moreover, moments later, after finding appellant guilty and sentencing him, the judge reiterated that appellant could, "with the admission of [the] videotape . . .

---

[10] *Chatmon v. United States*, 801 A.2d 92, 100 (D.C. 2002).

[11] *Id.* (citing *(Linwood) Johnson v. United States*, 387 A.2d 1084, 1089 (D.C. 1978)).

appeal and ask the court to review my findings and to see whether or not they view this conduct was excessive as a matter of law or whether or not they thought that I decided that issue correctly." On this record, we are satisfied that the purpose of requiring timely objection at trial was fulfilled; the judge all but admitted that the specific ruling in question might have been prejudicially erroneous and reversible on appeal.

A second consideration reinforces our conclusion that appellant did not forfeit his claim of error by failing to raise a timely objection in the unique circumstances of this case. What is a defendant to think upon hearing the judge in his bench trial declare on the record that he will not permit the defense to present evidence because, after the prosecution's evidence is in, the judge has already made up his mind that the defendant is guilty? In essence, that is what appellant heard here, in no uncertain terms. Surely, a defendant hearing such a pronouncement by the trier of fact has every reason to think objecting would be pointless, since even if the judge were to relent, it could be anticipated he would not consider the defendant's evidence with anything resembling an open mind.[12]

---

[12] *Cf. In re M.C.*, 8 A.3d 1215, 1224 (D.C. 2010) (noting that this court has "expressed some reservation (but without deciding) 'whether plain error is ever an appropriate standard when a claim of judicial bias arising out of conduct during a trial is raised on appeal'" (quoting *In re J.A.*, 601 A.2d 69, 75 n.5 (D.C. 1991))).

And with a sentencing hearing before the same judge soon to follow, the defendant surely would think it unwise to insist on giving testimony that the judge has predetermined not to credit.[13] Thus, where a judge has so overtly (if unintentionally) discouraged a defendant from taking exception to a ruling, we must hesitate to deem the failure to make explicit objection a forfeiture of the defendant's claim of error in that ruling.

On both the foregoing rationales, we shall treat appellant's claim of error as preserved.

## C.

There is no question that it was error to bar "any self-defense testimony" from appellant, and that the error was of constitutional dimension. A criminal defendant's right to testify is a "fundamental" right "derived from 'several provisions in the Constitution,'"[14] including the "due process clauses of the Fifth

---

[13] *Cf. Belton v. United States*, 581 A.2d 1205, 1212 (D.C. 1990) ("[I]t would be expecting too much to hold a defendant accountable for failing, in effect, to accuse a judge of bias at the hearing just before the discretionary, virtually non-reviewable act of sentencing takes place.").

[14] *Arthur v. United States*, 986 A.2d 398, 405 (D.C. 2009) (quoting *Rock v. Arkansas*, 483 U.S. 44, 51 (1987)).

and Fourteenth Amendments, which guarantee the defendant 'an opportunity to be heard in his defense,'"[15] and the Compulsory Process Clause of the Sixth Amendment, which "grants to the accused *personally* the right to make his defense."[16] It is also a "'necessary corollary to the Fifth Amendment's guarantee against compelled testimony,' which ultimately protects the defendant's 'choice of whether to testify in one's own defense.'"[17] We accordingly have recognized that "the fundamental fairness of a criminal trial is called into question" if the defendant is deprived of the right to freely decide whether to testify on his own behalf.[18] This is so even though "a defendant who chooses to testify may actually decrease his or her chance of acquittal," because "[t]he wisdom or unwisdom of the defendant's choice does not diminish his right to make it."[19]

---

[15] *Boyd v. United States*, 586 A.2d 670, 672 (D.C. 1991) (quoting *Rock*, 483 U.S. at 51).

[16] *Arthur*, 986 A.2d at 405 (quoting *Rock*, 483 U.S. at 52 (quoting *Faretta v. California*, 422 U.S. 806, 819 (1975))).

[17] *Boyd*, 586 A.2d at 672 (quoting *Rock*, 483 U.S. at 52–53).

[18] *Id.* at 677 (quoting *People v. Curtis*, 681 P.2d 504, 511 (Colo. 1984) (en banc)).

[19] *Id.* at 673 (quoting *Curtis*, 681 P.2d at 513).

In *Arthur v. United States*, we held that the trial court violated the defendant's right to testify by pressuring the defendant into waiving it through gratuitous inquiry and admonitions about the inadvisability and risk of taking the witness stand.[20]  In this case, the deprivation was more stark.  The trial judge did not just persuade or pressure appellant not to testify, he flatly *prohibited* him from testifying.  Although the judge did not prevent appellant from testifying entirely, he barred appellant from testifying about anything truly important, because as the judge himself said, the issue of self-defense was "[t]he only unresolved issue[]" at trial.

The trial judge lacked justification for denying appellant the opportunity to testify in support of his claim that he lawfully had defended himself from Officer Boucheron's use of excessive force in restraining him.  The judge did not purport to exclude appellant's testimony on the ground that it would have been irrelevant or otherwise inadmissible under any rule of evidence.[21]  Rather, the judge simply

---

[20]  986 A.2d at 402–04, 407.

[21]  *Cf. Heath v. United States*, 26 A.3d 266 (D.C. 2011).  In *Heath*, we held that a trial court's erroneous application of a non-constitutional, valid rule of evidence to exclude defense evidence may amount to a violation of the defendant's constitutional right to present a defense if "there exists a reasonable probability that the [erroneously] omitted evidence, evaluated in the context of the entire record, would have led the [trier of fact] to entertain a reasonable doubt that did not

*(continued…)*

decided he had seen and heard enough during the government's case-in-chief to conclude that Officer Boucheron did not use excessive force, and that he could not be persuaded otherwise no matter what appellant might say about it. Regardless of the strength of the evidence in the government's case-in-chief, on which the judge relied, this was not a legitimate basis for prohibiting appellant from testifying on the issue in the hope of persuading the judge that Officer Boucheron in fact had employed unreasonable force by choking him.

*Holmes v. South Carolina*[22] is instructive on this point. In *Holmes*, the Supreme Court addressed the constitutionality of a state rule of evidence that prevented criminal defendants from introducing evidence of third-party guilt if the prosecution presented sufficiently strong forensic evidence of the defendant's guilt.[23] The Court held that the state rule violated a criminal defendant's constitutional right to have a "meaningful opportunity to present a complete

---

*(…continued)*

otherwise exist." *Id.* at 281 (emphasis omitted). This "reasonable probability" requirement does not apply where, as in this case, the exclusionary ruling was not grounded on a merely misapplied non-constitutional rule of evidence, but instead was simply a flat-out denial of a fundamental constitutional right.

[22] 547 U.S. 319 (2006).

[23] *Id.* at 323–24, 329.

defense" because it allowed courts to exclude admissible defense evidence regardless of the strength of its "logical connection to the central issues," merely because the prosecution's proof was "strong enough."[24]  As *Holmes* explains, a trial court has no way of knowing whether the prosecution's proof is "strong enough" "without considering challenges to [its] reliability . . . ."[25]  And "by evaluating the strength of only one party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt."[26]  As a result, the Court determined that the rule was unconstitutionally "arbitrary."[27]

The ruling below was "arbitrary" for the same reason the rule in *Holmes* was "arbitrary"—it precluded the introduction of evidence supporting a legally valid defense regardless of its admissibility and the strength of "logical connection to the central issue[]," merely because the government's evidence on that issue up to that point appeared to the trial judge to be "strong enough."  But as *Holmes* instructs, the judge could not assess whether the prosecution's proof was "strong enough"

---

[24] *Id.* at 329–31 (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).

[25] *Id.* at 330.

[26] *Id.* at 331.

[27] *Id.*

without "considering challenges to its reliability[;]" challenges such as appellant's testimony, which conceivably could have "rebut[ted] or cast doubt" on Officer Boucheron's testimony.[28]

That the trial judge conducted a *Boyd* inquiry and ascertained appellant chose not to testify does not "redeem" the error, just as the *Boyd* inquiry did not cure the error in *Arthur*.[29]  In *Arthur*, the defendant waived his right to testify only "after the judge addressed him, not merely to inform him of the right to testify or not, but also on the advisability and the risk of taking the stand."[30]  These "circumstances, taken as a whole, call[ed] into question the validity of [Arthur's] waiver."[31]  In the present case, the waiver is even more suspect, and we cannot consider it valid, because appellant waived his right to testify *only after* the judge

---

[28]  Appellant could and did test the prosecution's proof through cross-examination, which included confronting Officer Boucheron with his body camera footage, so it cannot be said that the prosecution's evidence was completely unchallenged.  However, the opportunity to cross-examine is not enough to justify the preclusion of further challenge by other means in the defense case.

[29]  *Arthur*, 986 A.2d at 407.

[30]  *Id.* (emphasis omitted).

[31]  *Id.*

told him point-blank that he could not testify about the only issue worth testifying about.[32]

We come, then, to the question of whether appellant, having preserved his claim and shown he was denied his constitutional right to testify in his defense at trial, is entitled to relief from his conviction for simple assault. The question turns on whether the government has shown the error was harmless.

**D.**

In *Arthur*, this Court found it unnecessary to decide whether denial of a defendant's constitutional right to testify is a kind of structural error that cannot be

---

[32] The appellant in *Arthur* expressed his intention to testify before the court pressured him to change his mind. *Id.* at 412. In this case, the trial transcript does not show that appellant expressed a desire to testify. However, appellant asserts on appeal that he intended to testify in support of his self-defense claim, and the government does not dispute it. The trial transcript suggests to us that defense counsel likely did intend to call appellant to explain how Officer Boucheron's body camera footage did show him choking appellant, after the officer had denied it when confronted with the footage on cross-examination. The judge evidently expected counsel to do so (since otherwise the judge had no reason to preclude appellant's testimony on the subject *sua sponte*), and he stated explicitly that he understood appellant was declining to take the stand "in light of" his ruling that appellant would not be allowed to testify he was defending himself from excessive force.

deemed harmless.[33]  We need not decide that open question in this case either.  If the deprivation was not *per se* reversible as a structural error, we nevertheless must grant appellant a new trial unless the government proves "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."[34]  This is a heavy burden of proof indeed, for when weighing the harm of violations of the right to testify, "the judicial scale tips heavily in favor of finding prejudice."[35]  "This derives, at least in part, from the virtual impossibility of assessing the important 'dignity interests' at the core of the defendant's right 'to become an active participant in the proceeding that affects his life and liberty and to inject his own action, voice and personality into the process . . . .'"[36]

We conclude that the government has not met its burden of proving harmlessness beyond a reasonable doubt in this case.  Three factors are paramount. First, appellant could have testified credibly that Officer Boucheron was choking

---

[33]  *Id.* at 414–16.

[34]  *Chapman v. California*, 386 U.S. 18, 24 (1967).

[35]  *Arthur*, 986 A.2d at 416.

[36]  *Id.* (quoting *Boyd*, 586 A.2d at 674, and *Wright v. Estelle*, 572 F.2d 1071, 1078 (5th Cir. 1978) (Godbold, J., dissenting)).

him when he bit the officer's hand.[37] Although Officer Boucheron denied it, his body-camera footage was not clear enough by itself to resolve the question one way or the other. Second, appellant's inability to present this testimony was a critical loss to his defense, because he was the sole defense witness; his testimony was necessary to put facts into evidence and contradict Officer Boucheron in ways his counsel could not manage on cross-examination alone.[38] Third, the government's proof was not overwhelming.[39] The judge found that Officer Boucheron "didn't give [appellant] much opportunity to submit," "that he sort of came out and said, you, you, you, stop, . . . and grabbed him in the area that was certainly close to his neck," and that his use of force "was violent." All this, just to stop an alleged shoplifter.[40] For these reasons, we are not persuaded that appellant's potential testimony had no reasonable possibility of raising a sufficient doubt as to whether Officer Boucheron used excessive force and whether the government disproved appellant's claim of self-defense.

---

[37] *See id.* at 416–17.

[38] *See id.* at 417–18.

[39] *See id.* at 418.

[40] *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (suggesting that the less severe the security problem, the less reasonable the force used).

We find the government's arguments to the contrary to be unpersuasive. The government argues that appellant's testimony would have been inconsequential because whether the officer's use of force was excessive from appellant's perspective is irrelevant to the question of whether it was excessive "from the officer's perspective."[41] But this argument is flawed. The main issue here is not a matter of opinion or perspective, but rather a question of what force Officer Boucheron actually used; did he choke appellant or not? Moreover, Officer Boucheron's view as to the appropriate amount of force to employ in this case is not conclusive, because the excessiveness inquiry is an objective one—we have defined reasonable force as "that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the officer, would have deemed necessary."[42] The fact that excessiveness is to be judged from the perspective of a *reasonable officer* does not render testimony from people *who are not officers* irrelevant. In past excessive force cases, this court has considered testimony from

---

[41] Brief for Appellee at 9 (emphasis omitted).

[42] *Speed*, 562 A.2d at 129; *see also* Criminal Jury Instructions for the District of Columbia, No. 4.114 ("Assault on a Police Officer") (5th ed. rev. 2020) (instructing that "the amount of force that appears reasonably necessary to make or maintain the stop" is that which "*an ordinarily careful and intelligent person* in the officer's position would think necessary" (emphasis added)); *cf. Graham v. Connor*, 490 U.S. 386, 397 (1989) (explaining that, in the Fourth Amendment context, "the 'reasonableness' inquiry in an excessive force case is an objective one").

non-officers relevant to the issue of whether a reasonable officer would consider force reasonably necessary.[43]

The government also argues that appellant's testimony would have been cumulative. We disagree. The only evidence appellant's testimony could have repeated—the only other evidence presented at trial—was Officer Boucheron's testimony and the body-camera footage. As to the former, appellant presumably would have disputed Officer Boucheron's version of events, not repeated it. As to the latter, appellant's testimony would have been no more cumulative than Officer Boucheron's testimony; both witnesses were entitled to explain and clarify what the video footage depicted.

We cannot agree that the constitutional error in this case was harmless beyond a reasonable doubt. There is "at least a 'reasonable possibility' that the trial court would have been moved by [appellant's testimony] and proceeded differently,"[44] particularly given the judge's acknowledgment that it might be excessive if an officer "put [a suspect] in a chokehold for a theft case." Thus, we

---

[43] *See, e.g.*, *Kotsch v. District of Columbia*, 924 A.2d 1040, 1050 & n.9 (D.C. 2007); *District of Columbia v. Jackson*, 810 A.2d 388, 393 (D.C. 2002).

[44] *Roberts v. United States*, 213 A.3d 593, 598 (D.C. 2019) (citing *Chapman*, 386 U.S. at 24).

must reverse appellant's conviction for assault and remand for a new trial on that count.

## III.

We can address appellant's remaining claims more briefly.

## A.

Appellant raises two sufficiency claims. We review these claims de novo, "viewing the evidence in the light most favorable to the prosecution, with due regard for the right of the . . . trier of fact to weigh the evidence, to determine the credibility of witnesses, and to draw reasonable inferences."[45] The evidence is sufficient if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[46]

First, appellant argues the evidence was insufficient to establish that Officer Boucheron was "engaged in official police duties" at the time of his encounter with

---

[45] *Powell v. United States*, 238 A.3d 954, 957 (D.C. 2020) (quoting *In re D.P.*, 122 A.3d 903, 907 (D.C. 2015)).

[46] *Id.* (quoting *Solon v. United States*, 196 A.3d 1283, 1289 (D.C. 2018)).

appellant because he was "working outside employment."[47]  We disagree.  This court has held that a uniformed police officer working at a part-time job in the District while off-duty is "engaged in the performance of [his] official duties" when taking action to stop the commission of a crime.[48]

Second, appellant claims the evidence was insufficient to establish that he was not authorized to take the wine bottle.[49]  He contends that proving this element of theft required direct evidence, namely, testimony from a store employee confirming that appellant lacked the store's consent to take the wine.  But direct evidence is not necessary; circumstantial evidence can also support a conviction.[50]  Officer Boucheron testified that he watched appellant "go to the beer and wine section and pull his jacket up and place a bottle of champagne into his pants and

---

[47]  *See Speed*, 562 A.2d at 128–29 (holding that the right of self-defense against a police officer is limited to defending against the use of excessive force if the officer was "engaged in official duties" at the time of the assault).

[48]  *Mattis v. United States*, 995 A.2d 223, 226–27 (D.C. 2010).

[49]  D.C. Code § 22-3211.

[50]  *Bernard v. United States*, 575 A.2d 1191, 1193 (D.C. 1990).

attempt to walk out [of] the store" without paying. A reasonable factfinder could infer from this behavior that appellant was stealing the bottle.[51]

## B.

Appellant also raises two claims that the trial judge "misapplied the law" governing the charged offenses. Because appellant made no objection at trial, we review only for plain error.[52]

First, appellant argues that in convicting him of theft, the trial judge erroneously mentioned asportation and taking property "against [someone's] will," which are elements of robbery, not theft.[53] However, even if the judge erroneously required the government to prove these elements, which is not at all obvious on the record before us, this would only have *heightened* the government's burden, not *lessened* it.[54] Thus, appellant was not prejudiced by the asserted errors.

---

[51] *See Carmon v. United States*, 498 A.2d 580, 583 (D.C. 1985) (permitting inference that appellant intended to "appropriate [sweaters] without complete payment" where "appellant concealed the sweaters under his coat and walked out of the store without paying for them").

[52] *See supra* note 8.

[53] *Gray v. United States*, 155 A.3d 377, 382 (D.C. 2017).

[54] *Id.* ("Proof of robbery requires proof of the elements of theft plus several aggravating circumstances . . . .").

Second, appellant argues that the judge did not apply the proper legal standard in assessing the reasonableness of the force Officer Boucheron used, in that the judge allegedly (1) considered only the most egregious cases of violence to be excessive and failed to recognize that choking appellant might have been excessive under the circumstances, (2) did not assess the reasonableness of the force Officer Boucheron employed from appellant's perspective, and (3) did not consider all relevant factors in evaluating the reasonableness of the force used to restrain appellant.  Given our reversal of appellant's conviction for simple assault and remand for a new trial on that count, we have little reason to discuss these claims of error at length.  Suffice it to say that the record does not support the first claim (in fact, as we have mentioned, the judge expressly agreed that it could be excessive for an officer to "put [a suspect] in a chokehold for a theft case").  The second claim misapprehends the law; as previously discussed, the perspective from which a court assesses the reasonableness of the use of force is not the defendant's, but that of a reasonable officer on the scene.  As for the third claim, it too lacks sufficient support in the record to survive plain error review.  Although the judge did not articulate every factor relevant to the excessive force inquiry (in particular, the judge did not make an express finding as to whether Officer Boucheron choked appellant), the judge was not required to do so, or to make specific findings in the

absence of a request for them. We note that the judge stated on the record that "excessive force" depends on many different factors.

## C.

Appellant's last claim is that the trial judge erred by failing to recuse himself *sua sponte*, pursuant to Rule 2.11(A) of the 2018 D.C. Code of Judicial Conduct, after appellant's counsel declared during opening statements that appellant would not contest the theft charge.[55] Appellant did not move for the judge to recuse himself, or otherwise raise the issue at trial. It follows, even assuming the lack of objection did not amount to a waiver,[56] that we review this claim only for plain error.[57]

---

[55] Appellant does not cite the Code of Judicial Conduct, but we interpret his claim as one contending that trial judge violated Rule 2.11(A), given his reliance on our decision in *Plummer v. United States*, 43 A.3d 260 (D.C. 2012), and focus on the judge's supposed appearance of impartiality. The government also interprets appellant's argument as we do, citing Rule 2.11(A).

[56] Judicial disqualifications may be waived, except when the judge "has a *personal* bias or prejudice concerning a party or a party's lawyer, or *personal* knowledge of facts in dispute." *See* D.C. Code of Judicial Conduct, Rule 2.11(A), (C) (2018 ed.) (emphasis added). This case does not involve such a non-waivable personal disqualification. *See Plummer*, 43 A.3d at 267. And generally speaking, "[a]bsent a reason to believe a party was intimidated into silence, a party waives its disqualification claim where it knew of the grounds for a waivable disqualification motion but failed to bring that motion in a timely manner in the proceedings."

*(continued…)*

The relevant facts are as follows. In his opening statement, appellant's counsel began by saying, "we don't deny the Theft 2 shoplifting. [Appellant] has virtually admitted that from the get-go." The judge interjected, "Well, he hasn't admitted to it under oath . . . . If he wants to plead guilty to it, he can do that. If he doesn't want to plead guilty, the [g]overnment still has to prove it . . . ." When counsel then started to say that "we tried to reach an agreement with the [g]overnment," the judge interrupted him: "even though you [i.e., defense counsel] were acknowledging he really has no defense to it, that doesn't resolve it unless he's going to plead guilty. And if he wants to plead guilty, he can. If he doesn't want to, then the [g]overnment will just have to prove it." Appellant's counsel agreed with this, and the judge confirmed it, asking, "he's not willing just to go ahead and plead right now to the theft charge. Is that correct?" Appellant's counsel answered, "[I]t won't make a difference as to the simple assault," after which the government was put to its proof.

Rule 2.11(A) provides that "a judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." In

---

*(...continued)*
*Friends of McMillan Park v. D.C. Mayor's Agent for Historic Pres.*, 207 A.3d 1155, 1165 (D.C. 2019) (footnotes omitted).

[57] *See Plummer*, 43 A.3d at 267.

*Plummer v. United States*, we said that an objective observer could reasonably question the judge's impartiality when, during a plea proceeding, appellant "actually admit[s] his guilt or otherwise incriminate[s] himself," but then aborts the plea and proceeds to a bench trial, because "it would [be] difficult for any trier of fact to put [the prior incriminating statements] out of mind."[58]

Appellant argues that he "admitted his guilt, through counsel, to the theft charge," and therefore "the rule articulated in *Plummer*" required the judge to recuse himself. However, appellant never pled guilty. The court explicitly asked if appellant was going to plead guilty to the theft charge, but appellant's counsel demurred and put the government to its proof. Appellant also neither admitted guilt nor made an incriminating statement.[59] At most, his counsel said, without elaboration, that appellant had "virtually admitted" the theft charge. But "virtually" implies something short of "actually" or "entirely," and that is exactly how the judge understood it—not as an affirmative admission of guilt, but as an

---

[58] *Plummer*, 43 A.3d at 265–66.

[59] *Cf. Banks v. United States*, 516 A.2d 524 (D.C. 1986). Banks was charged with unlawful distribution of cocaine and heroin. During the plea proceeding, he admitted, "the only part that I did sell [is] the cocaine, but I didn't sell any heroin." *Id.* at 526. We held that the trial judge who heard appellant make that admission should have recused himself after rejecting the guilty plea. *Id.* at 529.

"acknowledg[ement]" by counsel that appellant "really has no defense" to put on to the theft charge. That, of course, would be apparent soon enough without counsel's vague concession in opening statement.[60]

We also see no record support for appellant's claim that his counsel's remark led the trial judge to prejudge appellant's guilt, as in *Butler v. United States*.[61] There, we held that the judge should have recused himself after defense counsel told him during a pretrial hearing that the government could prove its case beyond a reasonable doubt.[62] In contrast, appellant's counsel did not admit that the government could carry its burden, and the court repeatedly emphasized that "the [g]overnment will have to prove it."

In sum, we are satisfied that appellant was not prejudiced by his counsel's opening remarks, as incautious and inappropriate as they may have been. Appellant has not shown that the judge plainly erred by continuing to preside over

---

[60] We think the situation would not have been materially different had the court been informed during opening statement that appellant had made a confession that would be introduced against him at trial.

[61] 414 A.2d 844 (D.C. 1980).

[62] *Id.* at 852.

the bench trial after hearing defense counsel's opening. The judge disregarded counsel's comments and held the government to its proof.

## IV.

For the foregoing reasons, we reverse appellant's conviction for assault and remand for a new trial on that charge. To preserve the appearance of fairness and impartiality, and without casting any aspersion on the conscientiousness and integrity of the trial judge, we direct that on remand any bench trial be conducted before a different trial judge.[63] We affirm appellant's conviction for theft.

*So ordered.*

---

[63] *See In re D.E.*, 991 A.2d 1205, 1214 (D.C. 2010) (quoting *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977) (en banc)); *Thorne v. United States*, 46 A.3d 1085, 1093 (D.C. 2012) (citing *In re D.E.*, 991 A.2d at 1214).